UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :

SCG MIMA TOWERS LLC,                :

                           Plaintiff,           :

                                                   :             24-CV-8277 (VSB)
                   - against -          :

                                                   :            **OPINION & ORDER**

KENNETH NOBLE, *et al.*,                 :

                           Defendants.  :

------------------------------------------------------------X

Appearances:

Carmine D. Boccuzzi, Jr.
Boaz S. Morag
Cleary Gottlieb Steen & Hamilton LLP
New York, NY
*Counsel for Plaintiff*

Kenneth Eric Noble
Noble Law PLLC
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Defendants removed this case to this Court from the Civil Court for the City of New York, New York County, Housing Part on October 31, 2024. (*See* Doc. 1.) Before me are Defendants' filings submitted in response to my February 27, 2025 order that Defendants show cause why this case should not be remanded to state court for lack of subject-matter jurisdiction. (*See* Doc. 9 ("Mem."); Doc. 7 ("Show-Cause Order" or "OTSC").) I am also in receipt of Plaintiff's letter to me dated May 7, 2025 seeking remand to state court, (Doc. 16 ("Pl. Ltr.")), and Defendants' letter dated May 8, 2025, in opposition, (Doc. 17 ("Def. Ltr.")). Because I find

that there is no subject-matter jurisdiction over this action, the case is REMANDED to state court.

I. **Background**

On October 16, 2024, Plaintiff initiated this action in the Civil Court for the City of New York, New York County, Housing Part ("Housing Court" or "state court") against Defendants Kenneth Noble, Jansen Salsich, John Doe, and Jane Doe as a Notice of Petition for Nonpayment of Rent. (*See* Docs. 1-1, 1-2.) On October 31, 2024, Defendant Noble—on consent of all Defendants and proceeding *pro se*—removed the case to this District. (*See* Doc. 1.) On November 11, 2024, Defendant Noble filed an answer and asserted a counterclaim against Plaintiff for "setoff" of the unpaid rent based on amounts Plaintiff allegedly owes Noble for certain foreign sovereign bonds. (*See* Doc. 4.) On November 21, 2024, I accepted this case as related to No. 24-CV-8257, and the case was assigned to me.[1]

On February 27, 2025, I ordered Defendants to show cause why this action should not be remanded to state court based on lack of subject-matter jurisdiction. (*See* OTSC.) I explained that federal courts look only to a plaintiff's well-pleaded complaint to determine whether subject-matter jurisdiction is proper, and that here the state-court petition for nonpayment of rent presented no federal question on its face. (*Id*. 2–3.) I also noted that it is irrelevant whether Defendants' counterclaim raises a federal question. (*See id*.) Defendants timely responded to the Show-Cause Order on March 20, 2025. (*See* Mem.)

---

[1] Defendants represent that in the related case, "Noble seeks a declaratory judgment that certain Shanghai state-owned enterprises, including Shanghai Towers, are alter egos of the People's Republic [of China] for purposes of mutuality under the common law of set off." (Mem. 2.) *See also Noble v. People's Republic of China*, No. 24-CV-8257 (S.D.N.Y. filed Oct. 30, 2024). The actions pending before this Court involve the same "1937 Sovereign Bonds" allegedly owned by the People's Republic of China. (*See* Mem. 1–2.) Separately, in the United States District Court for the District of Columbia, an affiliate of Noble is pursuing an action against the People's Republic of China regarding a different set of bonds. *See Noble Cap. LLC v. People's Republic of China*, No. 23-CV-3139 (D.D.C. filed Oct. 19, 2023).

On May 7, 2025, Plaintiff appeared in this action, (Docs. 13–14), and submitted a letter in response to my April 23, 2025 order in which I requested that Plaintiff explain its failure to prosecute this action in federal court, (see Doc. 10 (order); Doc. 16 ("Pl. Ltr.")). Plaintiff's letter explained its failure to appear in this action and requested that I remand this case to state court for lack of subject-matter jurisdiction. (See Pl. Ltr.) Defendants submitted a letter in opposition on May 8, 2025. (Doc. 17 ("Def. Ltr.").)

## II.     **Legal Standard**

Pursuant to 28 U.S.C. § 1441, a defendant to a case filed in state court may remove the case to federal court provided there is a basis for federal jurisdiction over the action. *See, e.g., Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 271 (2d Cir. 1994). "In cases of removal, the removing party bears the burden of establishing that all jurisdictional requirements have been met." *FT171, LLC. v. Itzkowitz*, No. 18-CV-542, 2018 WL 1587171, at *1 (S.D.N.Y. Mar. 29, 2018) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). "Where subject matter jurisdiction is lacking, 'the Court is obligated to decline removal and remand the case.'" *Id.* (quoting *Newman & Cahn, LLP. v. Sharp*, 388 F. Supp. 2d 115, 117 (E.D.N.Y. 2005)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Further, "[i]t is black letter law that federal courts may raise the issue of subject matter jurisdiction *sua sponte*." *Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 228 (S.D.N.Y. 2023) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107–108 (2d Cir. 1997)).

### III. Discussion

Article III of the Constitution defines the maximum scope of federal subject-matter jurisdiction, and "Congress determines, through [statutory] grants of jurisdiction, which suits [federal] courts can resolve." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). The general bases of subject-matter jurisdiction are 28 U.S.C. § 1331, which empowers "federal courts to resolve cases 'arising under' federal law," and 28 U.S.C. § 1332(a), which "give[s] federal courts power to decide 'diversity' cases, between 'citizens of different States' whose dispute involves more than a stated sum (the so-called amount-in-controversy)." *Royal Canin*, 604 U.S. at 26 (first quoting § 1331, then quoting § 1332(a)).

Here, there is no federal jurisdiction under these statutes. Whether a case "aris[es] under" federal law within the meaning of § 1331 depends on "the allegations in the plaintiff's 'well-pleaded complaint.'" *Royal Canin*, 604 U.S. at 26 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983)). The allegations in the state-court eviction petition do not raise a federal question; rather, as Defendants put it, "Shanghai Towers seeks judgment against Noble for the payment of a debt due and owing for rent in the amount of $100,000 and eviction if said money judgment is not paid." (Mem. 2.) As I previously noted, "it is well-settled that the landlord-tenant relationship is fundamentally a matter of state law," and an eviction petition on its face does not raise a federal question. *FT171*, 2018 WL 1587171, at *2 (quoting *United Mut. Houses, L.P. v. Andujar,* 230 F. Supp. 2d 349, 354 (S.D.N.Y. 2002)); *accord Baum v. Brown*, No. 22-CV-3415, 2022 WL 2315072, at *2 (S.D.N.Y. June 28, 2022) (remanding eviction holdover proceeding). Further, contrary to Defendants' position, (*see* Mem. 2–3), their counterclaim is irrelevant for purposes of jurisdiction under § 1331. It is well-settled that "a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's

4

complaint—cannot serve as the basis for 'arising under' jurisdiction." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (collecting cases).

Additionally—had Defendants asserted it, which they did not—diversity-of-citizenship under § 1332 would not be a proper basis for removal.[2] Defendants admit that Plaintiff served Noble with the eviction petition on October 21, 2024, (Doc. 1 ¶ 7), and that Noble resides in the subject apartment, which is located in Manhattan, (Doc. 3 ¶ 12). Thus, "the forum defendant rule," 28 U.S.C. § 1441(b)(2), would not permit removal on diversity grounds, as Noble was "properly joined and served as defendant[]" in the action and appears to be "a citizen of the State in which [the] action [was] brought." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704–05 (2d Cir. 2019) (internal quotation marks omitted).

Defendants also assert another basis for federal jurisdiction—the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1604–07. Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" unless one of the statute's enumerated exceptions applies. *Vera v. Republic of Cuba*, 867 F.3d 310, 316 (2d Cir. 2017) (quoting 28 U.S.C. § 1604). "In addition to the FSIA's substantive provisions, 28 U.S.C. § 1330 provides the 'sole basis for obtaining jurisdiction' in federal district court over claims against a foreign state." *Id*. (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). In other words, section 1330 gives life to foreign sovereign immunity by limiting federal jurisdiction only to claims that fit within one of the FSIA's exceptions to sovereign immunity. *See id*.; *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–36 (1989)

---

[2] One court in this District has concluded that federal courts lack original jurisdiction over rent-nonpayment petitions filed in New York City housing court, because such petitions are brought "pursuant to a summary procedure unique to the state courts." *180 Varick, LLC v. Think Passenger, Inc.*, No. 13-CV-2138, 2013 WL 3146828, at *2 (S.D.N.Y. June 20, 2013); *id*. ("[A] federal court cannot allow proceedings more summary than the full court trial at common law." (quoting *Glen 6 Assocs., Inc. v. Dedaj,* 770 F. Supp. 225, 227–28 (S.D.N.Y. 1991)). I express no opinion on this contention.

("[Section] 1330(a) confers jurisdiction on district courts to hear suits brought by United States citizens and by aliens when a foreign state is *not* entitled to immunity." (emphasis in original)).

Defendants argue, (*see* Mem. 12–14), that the FSIA confers subject-matter jurisdiction over this action because 28 U.S.C. § 1330(a) provides that federal "district courts shall have original jurisdiction . . . of any nonjury civil action against a foreign state . . . as to any claim for relief . . . with respect to which the foreign state is not entitled to immunity either under" the FSIA, and because 28 U.S.C. § 1607(a) provides that "[i]n any action brought by a foreign state . . . the foreign state shall not be accorded immunity with respect to any counterclaim for which a foreign state would not be entitled to immunity under [28 U.S.C. §§ 1605 and 1605A] had such claim been brought in a separate action against the foreign state." Thus, Defendants conclude, there is original jurisdiction over the eviction petition and the counterclaim, and the action may be removed to federal court.

This argument fails, because neither of the statutes provides for federal original jurisdiction over the state-court eviction petition. Section 1330(a) applies to an "action against a foreign state," (emphasis added), not an action brought by a foreign state. This makes sense because immunity doctrines protect defendants, not plaintiffs. *Cf. Gabay v. Mostazafan Foundtion of Iran*, 151 F.R.D. 250, 256 (S.D.N.Y. 1993) ("[S]overeign immunity provides not merely a defense to liability, but immunity from the burdens of litigation as well."). Defendants point to section 1607(c), which provides a substantive "exception[]" to general foreign sovereign immunity that applies to certain "counterclaims." *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 195 (2d Cir. 1999); *see also id*. at 196–98. Even assuming Defendants are correct that their counterclaim against Plaintiff fits within a FSIA exception—an assertion about which I express no opinion—Defendants would still need to demonstrate the propriety of removal under section

1331.  As discussed, a state-court defendant to a state-law case cannot remove to federal court by asserting a federal counterclaim.  *See, e.g.*, *Holmes*, 535 U.S. at 831; *Royal Canin*, 604 U.S. at 26.  This is true even if a federal court would have "original jurisdiction" over the counterclaim.  *Holmes*, 535 U.S. at 831.  After all, section 1331 gives federal courts "original jurisdiction" over cases "arising under" federal law, but a counterclaim may not "establish 'arising under' jurisdiction." *Id*.

Defendants fail to identify a single case supporting their contention that removal is proper under these circumstances.  Although they cite various cases permitting defendants to lodge counterclaims against foreign-state plaintiffs under the FSIA and its predecessor rules, (*see* Mem. 15–17), none of these cases involves an action by a foreign state commenced in state court.  *See Nat'l City Bank of New York v. Republic of China*, 348 U.S. 356, 357 (1955) ("[R]espondent brought suit in Federal District Court."); *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 613 (1983) ("[Respondent] brought suit . . . in the United States District Court."); *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 717 F. Supp. 3d 1, 6 (D.D.C. 2024) (explaining that the plaintiffs brought suit in federal court to enforce a foreign judgment).  Indeed, Defendants cite no authority—controlling or otherwise—establishing an exception to the well-pleaded complaint rule for counterclaims against foreign states amenable to suit under the FSIA.

I note as well that when Congress enacted the FSIA, it amended the removal statute, 28 U.S.C. § 1441, "to insert a subdivision (d) specifically authorizing removal of cases by defending foreign states and their state-owned entities." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3728.1 (4th ed. 2024) (citing, *inter alia*, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983)).  The statute provides that "[a]ny civil action

brought in a State court against a foreign state . . . may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(d).

This statute does not authorize Defendants' removal of this action. By its terms, the statute "discusses only a foreign state's right to remove." *Martinez v. Republic of Cuba*, 708 F. Supp. 2d 1298, 1302 (S.D. Fla. 2010). Numerous district courts have concluded that § 1441(d) permits only a foreign state, not other defendants, to remove a case to federal court. *See, e.g.*, *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 690–91 (S.D.N.Y. 1996) (concluding that an action was "not removable under 28 U.S.C. § 1441(d)" because the removing party was "not a foreign state under the FSIA"); *Martinez*, 708 F. Supp. 2d at 1303 ("[T]he FSIA's removal provision . . . allows only a foreign state to remove an action."); *accord Guan v. Bi*, No. 13-CV-5537, 2014 WL 953757, at *6–7 (N.D. Cal. Mar. 6, 2014) (examining removal under the FSIA). The Supreme Court has explained that the FSIA "guarantees foreign states the right to remove any civil action from a state court to a federal court" given "the potential sensitivity of actions against foreign states." *Verlinden*, 461 U.S. at 489 (internal quotation marks omitted). In other words, "in enacting the FSIA, Congress did not intend that all cases against a foreign state be in federal court; it merely gave foreign states the right to decide." *Martinez*, 708 F. Supp. 2d at 1302. Although Defendants aver that Plaintiff is a foreign state within the meaning of the FSIA, (*see* Mem. 18–27; Def. Ltr. 1), even if that is true, Plaintiff seeks remand, rather than invoking any right to removal under § 1441(d), (*see* Pl. Ltr. 1 ("[T]his action should be remanded.")).

Defendants also assert that I may "exercise supplemental jurisdiction . . . over the claim by [Plaintiff] against Noble because it arises out of the same operative facts as the counterclaim over which [this] Court has original jurisdiction." (Mem. 27.) This argument misses the point; a

8

federal counterclaim is an improper basis for removal. Additionally, Defendants claim that remanding this action to Housing Court would "constitute a big 'win' for the People's Republic of China." (Def. Ltr. 1.) As an initial matter, it is not clear what this assertion means in the context of whether there is subject-matter jurisdiction, and Defendants fail to explain its legal significance. In any event, the assertion is plainly irrelevant to a federal court's power to adjudicate the instant dispute and whether remand is appropriate.

In sum, Defendants have not demonstrated a proper basis for subject-matter jurisdiction over the state-court eviction proceeding. There is no federal-question jurisdiction, no diversity jurisdiction, and no jurisdiction under the FSIA. As Defendants explain, their counterclaim to the eviction petition "incorporated the allegations set forth in the Complaint filed in the related action," No. 24-CV-8257. (Mem. 12.) Defendants may litigate their setoff claim in that action, but not in this case as well. This order should not be read to express an opinion on the merits of any claim or assertion in No. 24-CV-8257.

### IV. Conclusion

For the foregoing reasons, it is hereby:

ORDERED that this case is remanded to state court.

The Clerk of Court is respectfully directed to REMAND the case to the Civil Court for the City of New York, New York County, Housing Part.

SO ORDERED.

Dated: May 16, 2025
    New York, New York

Vernon S. Broderick
United States District Judge